## Samuel Edwards, Jr., *v.* Ebenezer Parkhurst.

A contract for the sale of real estate, of which a third person is in adverse possession, is not corrupt, as against the policy of law, nor is it prohibited by the statute. The effect of the statute is merely to prevent the transfer of the *legal* title of land, which is in the possession of a third person, claiming adversely to the grantor.

But a deed of land, executed while a third person is in possession, adverse to the grantor, conveys to the grantee an equitable title to the land; and if he commence an action in the name of the grantor, to recover the possession, his equitable interest will be protected against any interference on the part of the grantor.

AUDITA QUERELA, brought to the supreme court to set aside an execution. The case was sent to the county court for trial by jury upon the plea of the general issue.

On trial the facts appeared as follows. On the twenty second of October, 1840, the defendant conveyed to Darius Spalding and Allen Spalding, by quitclaim deed, a tract of land in Roxbury, of

which the plaintiff was then in possession, claiming adversely to all others. The grantees in that deed commenced an action of ejectment against the plaintiff, in the name of Parkhurst, to recover the possession of the land, and obtained final judgment in their favor in the suit at the March Term, 1843, of the supreme court. The plaintiff then filed his declaration for betterments, which was sent to the county court for trial. On the third of March, 1844, the plaintiff attempted to settle the controversy with the defendant, and to purchase the land from him, and the defendant stated, that he had deeded the land to the Spaldings, previous to the commencement of the suit, with the understanding, that they were to defray the expenses of the suit, and, if they finally prevailed, were to let him have half of the land, but that they had either deeded the land to some other person, or, for some cause, had refused to let him have any portion of it, and that he did not consider himself bound by his contract; and he did, on the fourth of March, 1844, execute a deed of the land to the defendant and a release of the costs in the action of ejectment,—for all which he received about eighty dollars. The declaration for betterments was discontinued at the November Term, 1844, of the county court, and on the twelfth of February, 1845, the defendants took out a writ of possession, which was executed, March 12, 1845, by delivering the possession of the premises to Darius Spalding; and the collection of the bill of costs was stayed by this writ of *audita querela*. This suit was defended by the Spaldings, who claimed, that they were not bound by the release executed by Parkhurst.

The facts above stated having been found by the jury, the court, *pro forma*, directed a verdict for the plaintiff, and certified the case to the supreme court, for their final determination.

*J. L. Buck*, for plaintiff, insisted, that the deed from Parkhurst to the Spaldings was absolutely void, and that therefore Parkhurst had good right to convey the land to the plaintiff and to release the costs in the action of ejectment, and relied upon Rev. St. ch. 60, sec. 26, *Parkhurst* v. *Edwards*, 15 Vt. 618, and *Edwards* v. *Roys*, 18 Vt. 473,—citing, also, *Stevens* v. *Deering*, 2 Aik. 112, *Brinley* v. *Whiting*, 5 Pick. 348, *Williams* v. *Jackson*, 5 Johns. 489, *Wol-*

*cott et al.* v. *Knight et al.*, 6 Mass. 418, 4 Kent 446, 1 Sw. Dig. 120, 14 Mass. 200, and 9 Wend. 511.

*Peck & Colby*, for defendant, claimed, that the deed from Parkhurst to the Spaldings was good against the grantor, and estopped him from afterwards claiming title to the land, which estoppel bound the plaintiff, also, who purchased with notice of the prior deed, and that therefore the release of the costs by Parkhurst was inoperative, —citing *Livingston* v. *Peru Iron Co.*, 9 Wend. 511, *Jackson* v. *Demont*, 9 Johns. 55, *Wade* v. *Lindsay*, 6 Met. 407, Cro. Eliz. 445, *Edwards* v. *Roys*, 18 Vt. 473, *Haven* v. *Hobbs*, 1 Vt. 238, *Bullard* v. *Billings*, 2 Vt. 309, *Brackett et ux.* v. *Wait*, 6 Vt. 411, and *Edgell* v. *Bennett*, 7 Vt. 534.

By the Court. The important question in this case is, whether the rights of the Spaldings, by virtue of their deed from the defendant, are of such a character, that they can be regarded in the present suit. If the question were new in this state, we think, without violence to general principles, it might be held, that the deed conveyed no interest to the Spaldings, either at law, or in equity. This would certainly be so, if the statute is to be regarded as intended to *prohibit* such contracts, either in express words, or by implication. For then the contract would be held as illegal,—as arising *e turpi causa*. And in all such cases the party can assert no right under his deed, or contract.

But such has not been understood to be the effect of this statute. It is evident the statute does not regard the contract as corrupt, since it is provided, in express terms, that it "shall not affect any covenants contained in such deed, but they shall be obligatory, and the grantor shall be bound thereby." And the prohibitory clause in the statute seems to indicate, that the deed shall only be void as to conveying the land. These provisions are wholly inconsistent with the idea, that the contract is to be regarded as one *against the policy of the law*. If that were so, the court could have no doubt whatever, that it could not create any equity in the grantor, which could be regarded, either in a court of law, or equity. The language of the statute seems to imply, merely, that the deed is void

for the purpose of transferring the *title.* It seems to be a mere declaratory enactment, that a right of entry into lands is *but a chose in action,* and, as such, *not assignable.*

If that be the only effect of the statute, there is no difficulty in the case, more than in any case of the assignment of a mere right of action. No legal title passes; but the equitable title does pass, and will now be protected in a court of law, as fully as in a court of equity, although not formerly. If such *chose in action* ·be sued in the name of the assignor, it is fully protected against his admissions, made after the assignment, even by way of release, or from payments to him before or during the litigation, or after judgment. And we see no reason, why the same rule should not prevail here.

The grantor, being bound by the covenants in the deed, one of which is, that neither he, nor his heirs, or assigns, shall have or hold any title or right to the premises, would be estopped from ever claiming them, in violation of his covenants. And the plaintiff, having taken his deed with full knowledge of the facts, is equally estopped in equity, and by the express words of the deed.

It was proper, then, that the Spaldings should execute their writ of possession and collect their bill of cost. And as the defendant must be *bound by his deed,* which cannot be controlled by oral evidence, much less by the mere declarations of the grantor, there is nothing in the case to enable the plaintiff to defeat, or in any way control, the title of the defendant, which is really secured to the Spaldings. And upon the facts found, the defendant seems to us to be entitled to judgment.

Judgment for defendant.